**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **ANDREW SCOTT KIRKWOOD,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:21-CV-116-MJT** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY,** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

The Plaintiff, Andrew Scott Kirkwood ("Kirkwood"), requests judicial review of a final decision of the Commissioner of Social Security Administration with respect to his application for disability-based benefits. This action is before the undersigned magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.[1] The undersigned finds that the administrative law judge's decision lacks reversible error and is supported by substantial evidence, and therefore recommends affirming the decision denying benefits.

## I. JUDICIAL REVIEW

United States district courts may review decisions of the Commissioner of the Social Security Administration. 42 U.S.C. § 405(g) (2020). The scope of judicial review is limited, however, to determining whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir.

---

[1] General Order 05-06 refers civil proceedings involving appeals from decisions of the Commissioner of Social Security Administration to magistrate judges serving the divisions where the cases are filed. *See also* 28 U.S.C. § 636(b)(1)(B) (2009) and E.D. TEX. CIV. R. CV-72 for the Assignment of Duties to United States Magistrate Judges.

1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).   When the Commissioner applies proper law and the decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g).

Reviewing courts, therefore, give the Commissioner's decisions great deference.   *Leggett,* 67 F.3d at 564.   Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner.   *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance.  *Elfer v. Texas Workforce Comm'n*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary").   Rather, it is for the Commissioner to weigh evidence and resolve conflicts.   *See Anthony*, 954 F.2d at 295; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

When the Commissioner fails to apply correct principles of law, or when "substantial evidence"[2] does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.   *See* 42 U.S.C. § 405(g).   Thus, courts have power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a

---

[2]  "Substantial evidence" is a term of art meaning "more than a mere scintilla."   *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Anthony v. Sullivan*, 954 F.2d at 292.   Evidence is "substantial" when it is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.   *Biestek*, 139 S. Ct. at 1154*; Richardson v. Perales*, 402 U.S. at 401; *Marcello v. Bowen*, 803 F.2d 851, 853 (5th Cir. 1986).

rehearing.  Ordinarily, courts remand for further administrative proceedings to address and cure deficiencies.  *See, e.g., Newton v. Apfel*, 209 F.3d 448, 460 (5th Cir. 2000).

## II.  BACKGROUND

### A.    Procedural History

Kirkwood applied for disability insurance benefits on March 19, 2019, due to impairments that allegedly became disabling on July 18, 2018.  (Tr. 170-177.)  Following the denial of his claim, he requested a hearing before an administrative law judge which was held on July 31, 2020.  (Tr. 32-64.)  Kirkwood and Vickie Colenburg, a vocational expert, testified at the hearing.  (*Id.*)

On August 10, 2020, Administrative Law Judge Evangeline Mariano-Jackson ("ALJ") issued a decision denying Kirkwood's application.  (Tr. 12-28.)  Kirkwood requested review of the ALJ's decision by the Appeals Council, which was denied on January 11, 2021, thereby prompting this appeal.  (Tr. 1-4.)

### B.    Factual History

Kirkwood was 40 years old at the alleged onset date of disability, with a limited education and past work experience as a warehouse worker and apartment maintenance worker.  (Tr. 26.)  Kirkwood's application was denied at the initial and reconsideration levels.

### C.    Administrative Decision and Appeal

The ALJ utilized the five-step sequential analysis model specified by regulations and approved by courts in reaching her decision denying Kirkwood's application.[3]  At step one, the

---

[3]  Pursuant to 20 C.F.R. § 404.1520(a)-(f), the five steps are generally as follows:

1.  The Commissioner ascertains *whether an applicant currently engages in substantial gainful activity*.  (If so, a finding of non-disability is entered, and the inquiry ends.)

2.  The Commissioner determines *whether an applicant has a severe impairment or combination of impairments.*  (If not, the inquiry ends, and a finding of non-disability is entered.)

3. The Commissioner determines *whether any severe impairment(s) equals or exceeds those in a Listing of Impairments, 20 C.F.R. Subpt. P, Appendix 1* ("the Listings").  (If so, disability is presumed, and benefits are awarded.  If not, the analysis continues.)

ALJ found that Kirkwood has not engaged in substantial gainful activity since July 8, 2018, the alleged onset date.   (Tr. 18.)   At step two, she found that Kirkwood has two severe impairments: 1) cervical and lumbar radiculopathy; and 2) a learning disorder.   (*Id.*)   However, the ALJ found that his alleged impairments of depression, bipolar disorder, paranoia, schizophrenia, and attention deficit disorder were not "severe" impairments.   At step three, the ALJ found that his impairments of radiculopathy and learning disorder did not meet or medically qualify under the criteria of any listed impairment in the regulations at 20 C.F.R. pt. 404, subpt. P, app 1 (Listed Impairments) for presumptive disability.   (Tr. 18-19.)

The ALJ then determined that Kirkwood retained the residual functional capacity (RFC) to perform medium work with the following limitations: can only lift/carry 50 pounds occasionally and 25 pounds frequently; can stand/walk for 6 hours in an 8-hour day; can sit for 6 hours in an 8-hour day; can frequently but not constantly reach in all directions including overhead with the right upper extremity; can understand, remember and carry out simple, routine, and repetitive tasks requiring no more than one to three step instructions, free of any fast paced production requirements, involving only simple work-related decisions, and requiring no more than occasional decision making or changes in the work setting; can read for recognition only and not for content; and he is limited to basic math calculations, defined as simple addition and subtraction.   (Tr. 20-26.)   Ultimately, the ALJ found Kirkwood was not disabled and was able to perform past relevant work at step four.   (Tr. 26-28.)

---

4.   The Commissioner determines *whether any impairment(s) prevents the claimant from engaging in regular previous employment*.   (If so, a *prima facie* case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner.   *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

5.   The Commissioner determines *whether other work exists in the national economy which the applicant can perform*.   (If so, the burden shifts back to the applicant to show he cannot perform the alternative labor.   *See id.*; *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)).

In the alternative, at step five, the ALJ, relying on vocational expert testimony, found that Kirkwood was not disabled because he was able to perform other work that existed in significant numbers in the national economy, such as dishwasher, linen clerk, or industrial cleaner.   (Tr. 27.)

### III.   POINTS OF ERROR

Kirkwood's brief argues that the ALJ's RFC finding is not supported by substantial evidence and is based upon legal error because the ALJ did not adopt portions of Dr. Kevin Correia's and Dr. Nick Pomonis' opinions as to Kirkwood's functional limitations.   (Doc. #18.)

The Defendant argues in response that the ALJ properly considered and evaluated the medical opinions of record and was not required to adopt those opinions verbatim in making his RFC finding.   (Doc. #19.)   Further, the Defendant asserts that the ALJ's assessment is supported by substantial evidence.   (*Id.*)

### IV.   DISCUSSION AND ANALYSIS

A. Residual Functional Capacity ("RFC")

The regulations state that RFC means "the most you can still do despite your limitations." 20 C.F.R. § 416.945 (2012).   Thus, when making an RFC determination, the ALJ decides whether an applicant retains the physical and mental abilities necessary to perform activities generally required by competitive, remunerative work.   *See id.*; SSR 96-8p, 1996 WL 374184 (July 2, 1996).   The RFC involves three components: physical abilities, mental abilities, and other abilities affected by impairments.   20 C.F.R. § 416.945(b)-(d).

A person's RFC is assessed at steps four and five of the sequential evaluation process.   At that point, the person has demonstrated an impairment of a magnitude sufficient to significantly limit the ability to do basic work activities (step two), but not so severe as to match listed impairments (step three) from which disability is presumed.   Thus, the Commissioner must

determine whether, despite the presence of severe impairments, the person retains functional capacity to perform past relevant work (step four), and, if not, any available alternative work (step five).  SSR 96-8p, 1996 WL 374184 (July 2, 1996).  An ALJ's assessment of a person's RFC forms the basis of a hypothetical question to which a vocational expert may respond with an opinion as to whether there is alternative available work that a person with the applicant's impairments and functional limitations can perform.  *See Frazier v. Colvin*, No. A-11-CA-901-SS, 2013 WL 12393909, at *5 (W.D. Tex. Aug. 30, 2013).

In assessing an applicant's physical, mental, and sensory abilities, the regulation directs an ALJ to consider the claimant's exertional and non-exertional capacity.  Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling.  SSR 96-8p, 1996 WL 374184 (July 2, 1996).  Non-exertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength, *i.e.*, all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions, including an individual's abilities to perform physical activities such as postural (*e.g.*, stooping, climbing), manipulative (*e.g.*, reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (*e.g.*, understanding and remembering instructions and responding appropriately to supervision).  *Id.*  In addition to these activities, the ability to tolerate various environmental factors (*e.g.*, tolerance of temperature extremes) is also a non-exertional capacity consideration.  *Id.*

In the present action, the ALJ concluded that Kirkwood has the RFC to perform medium work[4], but with these limitations: only lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk for 6 hours in an 8-hour day; sit for 6 hours in an 8-hour day; frequently but not constantly reach in all directions including overhead with the right upper extremity; understand, remember and carry out simple, routine, and repetitive tasks requiring no more than one to three step instructions, free of any fast paced production requirements, involving only simple work-related decisions, and requiring no more than occasional decision making or changes in the work setting; read for recognition only and not for content; and only basic math calculations, defined as simple addition and subtraction.   (Tr. 20-26.)

Kirkwood argues that the ALJ's RFC finding is unsupported by substantial evidence because it conflicts with portions of Dr. Correia's and Dr. Pomonis' medical opinions regarding his mental functionality.   (Doc. #18.)   Kirkwood's brief does not dispute the physical functional limitations found by the ALJ.

### 1. *Evaluation of Medical Opinions*

The Social Security Administration promulgated a new rule regarding residual functional capacity determinations to govern all claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c (2017).   Because Kirkwood filed his disability application in 2019, the new rule applies.   This rule addresses how the ALJ is to consider and evaluate medical opinions and prior administrative medical filings in evaluating a claimant's residual functional capacity and eliminated the longstanding "treating-physician rule," which required the ALJ to give a treating physician's opinion "controlling weight" in the absence of certain other specific findings.  *See* 20

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(b), 416.967(b).

C.F.R. § 404.1527(c)(2) (describing the former "treating physician" rule).

The 2017 rule states that the ALJ is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Id.* at § 404.1520c(a). Instead, the ALJ is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency. *Id.* at § 404.1520c(b)(2). The remaining factors are treatment relationship with the claimant, specialization, and other factors, such as familiarity with other evidence in the claim. *Id.* at § 404.1520c(c). The ALJ must articulate how persuasive he finds each of the opinions in the record and explain the consideration of the supportability and consistency factors. *Id.* at § 404.1520c(b)(2). The ALJ may, but is not required to, articulate the consideration of the other factors, unless the Commissioner finds that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." *Id.* at § 404.1520c(b)(3). In those cases, the ALJ must articulate the consideration of the other factors.

In this case, Kirkland's mental health medical records were evaluated by state agency medical consultant Dr. Jean Germain, Ph. D. and Dr. W. Miller Logan, M.D.. Also, Kirkland was personally examined by consultative examiner Dr. Kevin Correia and treating Dr. Nick Pomonis for his alleged mental impairments.

On July 8, 2019, Dr. Kevin Correia performed a consultative psychological exam of Kirkwood. (Tr. 280-284.) He reported that Kirkwood drove himself to the exam, was fully cooperative, speech clear and well-formed, and provided a reliable history including his special education and dyslexia since the age of 10. (Tr. 280.) He reported depression and crying spells,

due to the deaths of his brothers, as well as insomnia and panic attacks.  (Tr. 281.)  He denied any psychiatric hospitalization.  (*Id.*)  Kirkwood reported normal activities of daily living, including taking care of himself and his ill mother.  (*Id.*)  Dr. Correia found his social skills mildly immature but adequate, and he had a normal attention span.  (*Id.*)  Kirkwood reported an 11-year work history and stated that he could no longer work due to pain and lack of focus.  (Tr. 282.)  Further, Kirkwood fully understood the purpose of the evaluation and his disability status and was able to demonstrate abstract reasoning skills with complex material.  (*Id.*)  Dr. Correia reported Kirkwood could remember basic immediate information with an average memory and displayed adequate concentration.  (Tr. 283.)  Dr. Correia diagnosed Kirkwood with mild depression and mildly deficient intellectual functioning.  (*Id.*)  Dr. Correia concluded that Kirkwood has the ability to understand, remember, and/or apply information, but is mildly impaired in his capacity of learning, recalling and using information to perform work activities. (*Id.*)  He stated that Kirkwood can follow "one-step instructions to carry out normal tasks, but he may have more trouble with two-step or more complex direction."  (*Id.*)  He also opined that Kirkwood can make simple work related decisions independently, and is able to work with, and relate appropriately to, supervisors and co-workers.  (*Id.*)  The ALJ found Dr. Correia's opinion supported by his own exam findings and the other evidence in the record, including his school records, function reports and testimony.  (Tr. 23.)  Consequently, she deemed this opinion "persuasive."  (*Id.*)

On July 21, 2019, Dr. Germain, state agency medical consultant, found that Kirkwood's alleged mental impairments were not severe, and he was not disabled.  (Tr. 70-71.)  On October 21, 2019, Dr. Logan made the same assessment.  (Tr. 89-91.)  Both of these opinions were based upon a lack of school records and an assumption that Kirkwood did not receive a "special

education." (*Id.*)   The ALJ noted this in her decision and found these opinions were inconsistent with more recently submitted evidence showing that Kirkwood did not finish high school, took special education classes, and had an ARD.   (Tr. 25.)   Thus, she found Dr. Germain's and Dr. Logan's reports only "partially persuasive." (*Id.*)

On June 20, 2020, Dr. Nick Pomonis evaluated Kirkwood and filled out a mental residual functional capacity form.   (Tr. 294-305.)   Although Dr. Pomonis is Kirkwood's treating doctor, the transcript only contains this one examination record for treatment of a mental impairment.   Dr. Pomonis notes that he previously treated Kirkwood for bipolar in 2003, but those records are not contained in the transcript.   (Tr. 294.)   Dr. Pomonis diagnosed Kirkwood with bipolar disorder, depression, schizophrenia, anxiety disorder, attention deficit disorder, low IQ, and personality disorder.   (*Id.*)   He noted that Kirkwood has not taken any medications for these mental impairments since 2008.   (*Id.*)   Dr. Pomonis checked the form's boxes for various symptoms. (Tr. 295-297.)   Notably, he checked that Kirkwood was "unable to meet competitive standards" for the following functions: completing a normal workday without interruptions from his symptoms; performing at a consistent pace; getting along with co-workers; dealing with normal work stress; setting goals or making plans independently; dealing with stress of semi-skilled and skilled work; interacting with the public; and maintaining socially appropriate behavior.   (Tr. 296-297.)   The only handwritten notes indicate that Kirkwood has severe anger, poor use of cognitive functions, and is too anti-social.   (Tr. 297-298.)   The ALJ found this opinion "less persuasive." (Tr. 25.)

## 2. *ALJ's Findings*

The ALJ found, based upon the above opinions and other evidence in the record, that Kirkwood has the mental RFC to: understand, remember and carry out simple, routine, and

repetitive tasks requiring no more than one to three step instructions; only perform work free of any fast paced production requirements; make only simple work-related decisions, requiring no more than occasional decision making or changes in the work setting; read for recognition only and not for content; and only do basic math calculations, defined as simple addition and subtraction. (Tr. 20-26.) As stated above, Kirkwood argues that this RFC conflicts with portions of Dr. Correia's and Dr. Pomonis' medical opinions and is therefore unsupported by substantial evidence. Specifically, he asserts that Dr. Correia opined that Kirkwood could follow "one step instructions" while the ALJ's RFC allows for 1 to 3 step instructions. (Doc. #18, at 8.)

As discussed, *supra*, an ALJ should discuss the factors of consistency and supportability in evaluating medical opinions. Here, in evaluating the opinion of Dr. Pomonis, the ALJ noted that Dr. Pomonis is a treating physician, but his specialty is osteopathic medicine—not mental health care. *See* 20 C.F.R. § 404.1520c(c)(4) ("The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty."). She also discussed that despite a long treatment history, the record contained only one medical visit for mental health treatment in which Dr. Pomonis filled out a medical source statement as to Kirkwood's functionality. (Tr. 24-25.) Therefore, the ALJ noted that this opinion was insufficiently supported by the medical records and inconsistent with the other evidence in the record. (Tr. 25.) She further stated that the lack of evaluation notes to coincide with the checked boxes suggests that the opinion was primarily based upon Kirkwood's subjective complaints, which had not been previously reported. (*Id.*); *see also Benson v. Saul,* No. 3:20-CV-1974-E-BH, 2022 WL 868706, at *16 (N.D. Tex. Mar. 8, 2022), *R.*

*& R. adopted,* 2022 WL 865886 (N.D. Tex. Mar. 23, 2022) ("The ALJ's reasons for finding the check-box form unpersuasive goes to the supportability of APN Sunil's opinion."). Consequently, the ALJ determined that this opinion was less persuasive than the opinion of Dr. Correia.

In evaluating the opinion of Dr. Correia, the ALJ found that his opinion was supported by the exam findings and consistent with the medical evidence in the record (showing that Kirkwood did not report significant psychiatric signs or symptoms but did report difficulty in school with reading and math). (Tr. 23.) The ALJ also found the opinion consistent with Kirkwood's function report and testimony. (*Id.*) Consequently, she found this opinion persuasive. Although, the ALJ's RFC finding allows for 1 to 3 step instructions, this is not a contradiction to Dr. Correia's findings, which merely cautioned that Kirkwood "*may have* more trouble with two-step or more complex direction." (Tr. 23) (emphasis added).

The social security regulations explain that the ALJ is the fact-finder in making the RFC assessment, and the ALJ is not required to adopt the RFC verbatim from a medical opinion, as this would nullify his role as fact-finder. *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) ("Though the ALJ neither adopted the state agency report verbatim nor accepted the testimony of Dr. Small, it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards."); *Pete v. Comm'r Soc. Sec. Admin.*, No. 6:18-CV-01239, 2020 WL 1492727, at *6 (W.D. La. Feb. 24, 2020), *R. & R. adopted*, 2020 WL 1492705 (W.D. La. Mar. 23, 2020) (citing *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016)). "[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

The court in *Grennan*, also addressed this same issue and explained that "the law only requires an 'accurate and logical bridge' within the ALJ's RFC explanation." *Grennan v. Comm'r of Soc. Sec.*, No. 4:21-CV-00645-O-BP, 2022 WL 2056277, at *3 (N.D. Tex. May 23, 2022), *R. & R. adopted*, 2022 WL 2053168 (N.D. Tex. June 7, 2022) (citing *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010)).   Further the court noted that "word-for-word recitations are not required so long as the explanation permits meaningful judicial review." *Id.*; *see also Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008) (requiring the ALJ to incorporate only those limitations she finds "consistent with the weight of the evidence as a whole").

The ALJ's explanation here provides such an "accurate and logical bridge" between the evidence considered and the conclusions reached.   In conclusion, the ALJ properly considered the medical opinions, and her RFC determination was properly based upon the medical evidence in the record, so her RFC determination is supported by substantial evidence.

### B. Past and Alternative Work

The ALJ found, with the support and testimony from the vocational expert, that Kirkwood is able to perform his past relevant work as a warehouse worker[5] and the following alternative jobs at the medium exertional level: dishwasher, linen clerk, and industrial cleaner.   (Tr. 26-27; 58-59; 61.)   The undersigned finds that substantial evidence supports the ALJ's decision at this step.   The expert also stated that these jobs were available in significant numbers in the national economy.   (*Id.*)   A finding based on vocational expert testimony generally must be upheld by the court unless it is determined by erroneous predicate findings occurring earlier in the sequential

---

[5] Although the ALJ also included Kirkwood's past work as an apartment maintenance worker in her findings, the vocational expert later recanted her testimony that Kirkwood could perform that job because of its skill level.   (Tr. 61.)   Any error in including this job is harmless, because the expert confirmed that the warehouse worker job still applied, and she also made alternative findings including three additional jobs available in significant numbers in the national economy.

analysis. *Elam v. Barnhart*, 386 F. Supp. 2d 746, 754 (E.D. Tex. 2005); *see also* 20 C.F.R. §§ 404.1566(d)-(e), 416.966(d)-(e). Such testimony constitutes substantial evidence when the hypothetical question asked of the vocational expert incorporates all limitations that the ALJ has found, the disabilities recognized by the ALJ are reasonable under the evidence, and the ALJ's ultimate determination is consistent with the expert vocational testimony. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). Therefore, there is also no prejudicial error at this step of the analysis.

## V. RECOMMENDATION

The ALJ's application of the sequential analysis is free from legal error and supported by substantial evidence for the reasons discussed in the preceding sections. Consequently, the administrative decision should be affirmed.

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2). A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district

judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 8th day of November, 2022.**

_____

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE